# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF VIRGINIA
# ABINGDON DIVISION

| | | |
|---|---|---|
| **RUBY GAIL COOK,** | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 1:19CV00031 |
| | ) | |
| v. | ) | **OPINION AND ORDER** |
| | ) | |
| **WAL-MART STORES EAST, LP,** | ) | By: James P. Jones |
| | ) | United States District Judge |
| Defendant. | ) | |

*John E. Jessee,* Jessee, Read & Howard, P.C., Abingdon, Virginia, and *Daniel D. Coughlin,* Massengill, Caldwell & Coughlin, PC, Bristol, Tennessee, *for Plaintiff; W. Bradford Stallard,* Penn, Stuart & Eskridge, Abingdon, Virginia, *for Defendant.*

In this premises liability action removed from state court, the plaintiff seeks to recover for injuries she sustained when she slipped on liquid laundry detergent at the defendant's retail store. The defendant has moved to strike the plaintiff's expert witness and for summary judgment. I find that the liability expert's testimony would not be helpful to the jury, and I will therefore grant the Motion to Strike. However, because I conclude that there are genuine disputes of material fact to be decided by a jury, I will deny the Motion for Summary Judgment.

I.

The following facts are taken from the summary judgment record and are undisputed except where noted.

Plaintiff Ruby Gail Cook was shopping in defendant Wal-Mart Stores East, LP's (Wal-Mart) Bristol, Virginia, store with a companion, Randy Alexander. She rounded a display in the middle of a wide, high-traffic aisle that runs from the front of the store to the back, which Wal-Mart calls Action Alley. As she did so, she stepped on spilled clear liquid laundry detergent, causing her to fall. Her foot became caught under the shopping cart she was pushing, and she sustained significant injuries to her knee, leg, and ankle.

Store security camera footage shows that approximately three minutes before Cook's fall, at a location about 40 feet away in Action Alley, another customer slipped but did not fall. That customer got the attention of an unidentified person, who then appears to have placed paper towels on the floor at the location where the customer slipped. The parties have been unable to identify the person who placed the paper towels. While the details of the person's attire are not completely clear on the video, the person's outfit — light-colored pants and a dark jacket or vest — is consistent with a Wal-Mart employee uniform.

The person who placed the paper towels did not remain in the immediate area thereafter. The customer who had slipped can be seen warning several other passersby of the potential hazard, but not in the area where Cook ultimately slipped and fell.

The clear liquid on the floor is not visible in the surveillance video. The video does not definitively show how the liquid came to be on the floor or how long it was there. The precise spot where Cook slipped is just outside the camera frame, although Cook's head is visible in the video as she falls.

After Cook's fall, several Wal-Mart employees worked to clean up the spill. They can be seen placing orange cones around the spill from where Cook fell past where the paper towels had been placed. The employees applied Spill Magic absorbent powder along the entire distance from beyond where the other customer had slipped, down to where Cook had slipped. The Wal-Mart employees spent about 20 minutes cleaning the spill. Store co-manager Edward Barker and front-end coach LeeAnne Yarber both stated that this was a large spill.

Wal-Mart's investigation of the incident determined that the spilled substance was clear liquid laundry detergent. Near where the first customer slipped was a display of Sun brand laundry detergent, which is a clear liquid. Photos show upside-down Sun detergent boxes on the bottom of the display. Testimony indicated that empty boxes were frequently turned upside down and used to support product displays. On the surveillance video, not long before the first customer slipped, Wal-Mart employee Matthew Galloway can be seen carrying a jug of laundry detergent in Action Alley, and his path appears consistent with where the Spill Magic powder was later applied after Cook's fall. Galloway

was wearing his Wal-Mart uniform at the time he carried the jug of detergent down Action Alley, and the record contains testimony that employees are not supposed to wear their Wal-Mart vests while off duty.  However, Wal-Mart time records and a sales receipt indicate that Galloway had clocked out prior to when he can be seen in the video, and he purchased a container of Sun liquid laundry detergent about ten minutes after Cook's fall.  Galloway has no independent recollection of his purchase and cannot say whether the jug of detergent he carried in the video was leaking.  The video shows that Galloway walked down Action Alley carrying the jug about half a minute before the first customer slipped.

Shortly after the paper towels were placed and less than a minute before Cook's fall, Alexander, Cook's shopping companion, appears to step on the paper towels while proceeding down Action Alley.  He walks out of the camera frame, then reemerges and places a box in Cook's shopping cart.  Cook then pushes her shopping cart toward the camera, slips, and falls.  Just after her fall, a Wal-Mart associate speaks to Alexander and appears to point toward the area with the paper towels.  This associate bears some resemblance to the person who placed the paper towels, although the quality of the video footage makes it difficult to tell whether they are the same person.  This associate apparently has not been identified or deposed.

In support of her claim, Cook has offered the testimony of Jerry Birnbach. Birnbach has Bachelor of Science degrees in architectural technology and architecture. He has spent his career designing retail displays and advising major retail customers on safety procedures. He has worked as a consultant for Wal-Mart in the past and has served as an expert witness in 250 cases, including against and on behalf of Wal-Mart, since approximately 2012.

The opinions Birnbach offers are based primarily on the security camera footage, along with some deposition testimony and Wal-Mart documents. He did not interview any witnesses, visit the store, or perform any tests. He opines that the jug of detergent carried by Galloway was leaking and caused the spill on which Cook slipped. He further surmises that the person who placed the paper towels in the other location on Action Alley was a Wal-Mart employee and did not follow proper procedures for spill cleanup. He states that the person who placed the paper towels violated both Wal-Mart internal policies and industry standards. According to Birnbach, had that purported employee followed the appropriate procedures, Cook's fall could have been avoided.

Birnbach makes several statements in his report that can best be characterized as assumptions. For instance, he asserts that based on his retail experience, he believes Galloway learned of a leak in a detergent jug and carried the leaking bottle of detergent to a collection area for faulty product. Aside from

the video footage of Galloway carrying detergent, nothing in the record supports this version of events. Birnbach acknowledged in his deposition that the detergent on the floor could have come from other sources, such as a damaged bottle in a customer's shopping cart.

On this record, Wal-Mart has moved to exclude Birnbach's testimony and for summary judgment in its favor. The motions are ripe for decision, having been fully briefed by the parties.[1]

## II.

The case of *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993), provides the basic analytical framework for determining the admissibility of expert testimony. Under *Daubert*, the court acts as a gatekeeper by ensuring "that any and all scientific testimony or evidence admitted is not only relevant, but reliable." *Id.* at 589. "[T]he trial judge's general 'gatekeeping' obligation [ ] applies not only to testimony based on 'scientific' knowledge, but also to testimony based on 'technical' and 'other specialized' knowledge." *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 141 (1999). The trial court's inquiry into admissibility is "a flexible one" and the court's analysis will "depend[] on the nature of the issue, the expert's particular expertise, and the subject of his

---

[1] I will dispense with oral argument because the facts and legal contentions are adequately presented in the materials before the court and argument would not significantly aid the decisional process.

testimony." *Id.* (internal quotation marks and citation omitted). More generally, cases after *Daubert* have shown that "the rejection of expert testimony is the exception rather than the rule." Fed. R. Evid. 702 advisory committee's note to 2000 amendment.

The principles of *Daubert* and its progeny are reflected in the Federal Rules of Evidence, which allow expert evidence under certain circumstances:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
>
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>
> (b) the testimony is based on sufficient facts or data;
>
> (c) the testimony is the product of reliable principles and methods; and
>
> (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702.

As stated by the advisory committee:

> When facts are in dispute, experts sometimes reach different conclusions based on competing versions of the facts. The emphasis in the amendment on "sufficient facts or data" is not intended to authorize a trial court to exclude an expert's testimony on the ground that the court believes one version of the facts and not the other.

Fed. R. Evid. 702 advisory committee's note to 2000 amendment. The reality is that "the trial court's role as gatekeeper is not intended to serve as a replacement for the adversary system." *Id.* (quoting *United States v. 14.38 Acres,* 80 F.3d 1074, 1078 (5th Cir. 1996)). As noted in *Daubert*, "[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." 509 U.S. at 596.

The Fourth Circuit has stated that expert testimony is admissible "if it concerns (1) scientific, technical, or other specialized knowledge that (2) will aid the jury or other trier of fact to understand or resolve a fact at issue." *Westberry v. Gislaved Gummi AB*, 178 F.3d 257, 260 (4th Cir. 1999). "Testimony from an expert is presumed to be helpful unless it concerns matters within the everyday knowledge and experience of a lay juror." *Kopf v. Skyrm*, 993 F.2d 374, 377 (4th Cir. 1993). Issues associated with the admission of expert testimony may arise when "the evaluation of the commonplace by an expert witness might supplant a jury's independent exercise of common sense." *Id.* (internal quotation marks and citation omitted). Additionally, "[a]n expert's opinion should be excluded when it is based on assumptions which are speculative and are not supported by the record." *Tyger Constr. Co. v. Pensacola Constr. Co.*, 29 F.3d 137, 142 (4th Cir. 1994).

I will exclude Birnbach's testimony because "it concerns matters within the everyday knowledge and experience of a lay juror." *Kopf*, 993 F.2d at 377. Here, a jury would be capable of reviewing the surveillance video and deciding for itself what happened. This case does not involve complicated, technical facts or scientific evidence. Furthermore, the jury may not consider Wal-Mart's internal policies and procedures in determining the standard of care. *Va. Ry. & Power Co. v. Godsey*, 83 S.E. 1072, 1073 (Va. 1915) ("Private rules may require of employees less or more than is required by law; and whether a given course of conduct is negligent, or the exercise of reasonable care, must be determined by the standard fixed by law, without regard to any private rules of the party.") Birnbach's opinions regarding Wal-Mart's policies and procedures, therefore, would not aid the jury in resolving disputed facts. Finally, Birnbach's proposed testimony contains inadmissible assumptions that are unsupported by the record evidence.

Jurors can use their own experience and judgment to determine what a reasonably prudent actor would have done in the time leading up to Cook's fall and whether a failure to act accordingly caused Cook's injuries. I conclude that Birnbach's testimony would not be helpful to a jury and is therefore inadmissible. I will thus grant Defendant's Motion to Strike Expert Testimony.

III.

A court should grant a motion for summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine dispute exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

> In considering a motion for summary judgment, the court is required to view the facts and draw reasonable inferences in a light most favorable to the nonmoving party. The plaintiff is entitled to have the credibility of all his evidence presumed. The party seeking summary judgment has the initial burden to show absence of evidence to support the nonmoving party's case. The opposing party must demonstrate that a triable issue of fact exists; he may not rest upon mere allegations or denials. A mere scintilla of evidence supporting the case is insufficient.

*Shaw v. Stroud*, 13 F.3d 791, 798 (4th Cir. 1994) (citations omitted).

Virginia substantive law governs this diversity action. *See Erie R.R. v. Tompkins*, 304 U.S. 64, 78 (1938). In Virginia, the law applicable to slip-and-fall cases is well settled. *See Winn-Dixie Stores, Inc. v. Parker*, 396 S.E.2d 649, 650 (Va. 1990). A landowner "must use ordinary care to keep his premises reasonably safe for an invitee, although he is not an insurer of the invitee's safety." *Tate v. Rice*, 315 S.E.2d 385, 388 (Va. 1984). The duty of the store owner has been summarized as follows:

> The store owner owed the customer the duty to exercise ordinary care toward her as its invitee upon its premises. In carrying

> out this duty it was required to have the premises in a reasonably safe condition for her visit; to remove, within a reasonable time, foreign objects from its floors which it may have placed there or which it knew, or should have known, that other persons placed there; to warn the customer of the unsafe condition if it was unknown to her, but was, or should have been, known to the store owner.

*Winn-Dixie Stores, Inc.*, 396 S.E.2d at 650 (citation and alterations omitted).

In the absence of evidence showing that some affirmative conduct of the defendant caused the dangerous condition, the plaintiff must show that the defendant had actual or constructive knowledge of the condition. *Ashby v. Faison & Assocs., Inc.*, 440 S.E.2d 603, 605 (Va. 1994). The applicable standard is whether the defendant "knew or should have known, of the presence of the [defect] that caused [the plaintiff's] fall and failed to remove it within a reasonable time or to warn of its presence." *Id.* Constructive knowledge of a defect or dangerous condition on the premises may be established by evidence that the condition "was noticeable and had existed for a sufficient length of time to charge its possessor with notice of its defective condition." *Grim v. Rahe, Inc.*, 434 S.E.2d 888, 890 (Va. 1993). In order to establish liability, a plaintiff must show that the defendant had notice of "the *specific* unsafe condition that injured *her*." *Hodge v. Wal-Mart Stores, Inc.*, 360 F.3d 446, 453 (4th Cir. 2004).

Evidence of internal policies or procedures does not change the duty owed to business invitees under Virginia law. *See Godsey,* 83 S.E. at 1073. "Virginia has long held that a person cannot, by the adoption of private rules, fix the standard of

his duties to others." *Elliott v. Food Lion, LLC,* No. 1:12-CV-1426, 2014 WL 1404562, at *7 (E.D. Va. Apr. 10, 2014) (internal quotation marks and citations omitted).

I find that Cook has produced evidence sufficient to raise genuine issues of material fact to be decided by a jury. The record contains evidence that the detergent on which Cook slipped was part of the same large spill on which another customer had slipped about three minutes earlier. From the video footage, reasonable jurors could conclude that the person who placed the paper towels was a Wal-Mart employee. Jurors could compare the clothing worn by this person with Wal-Mart uniforms that are more clearly depicted in the surveillance video and could consider, based on their experience and common sense, the likelihood of a nonemployee being alerted by a customer and placing paper towels on a spill. It would be reasonable for a jury to find that Wal-Mart had actual notice of the spill and failed to take appropriate action to remove the dangerous condition or to warn Cook in time to avoid her fall. I will therefore deny the Motion for Summary Judgment.

IV.

For the foregoing reasons, it is **ORDERED** that the Defendant's Motion for Summary Judgment, ECF No. 41, is DENIED, and the Defendant's Motion to Strike Expert Testimony, ECF No. 43, is GRANTED.

ENTER: December 18, 2020

/s/ JAMES P. JONES
United States District Judge